Good morning. May it please the Court, Elizabeth White for the United States. The question in this appeal is whether Officer Yannis had reasonable suspicion to affect a Terry stop. At the time he pulled over the defendant's car, what he knew is that just minutes earlier, the defendant had been sitting in the driver's seat of the car, passed out, dazed out, with a hypodermic needle and a shotgun next to him on the passenger seat, and that all this occurred in the parking lot of an apartment complex that was a hotspot for criminal activity, primarily drug activity. Yes, what a plural question. At one point the officer said, I couldn't tell whether there was a claim that this was a traffic stop and that Mr. Lafon had gone through a stop sign, in which case all the rest of this would be spinach, right? Yes. And in fact, he did testify that when he pulled, when Mr. Lafon pulled out of the apartment complex onto Maryland Parkway, which is a very busy parkway, taking a left, crossing across three lanes of traffic, that he blew past the stop sign that he did not stop. Did they refer to this as a traffic stop? They did not refer to this as a traffic stop. And one of the things that, I mean, he called it a Terry stop. And he testified that the reason that he was stopping him was because, you know, the guy had been passed out with a hypodermic needle and a shotgun, and he wanted to check that out. Well, he claimed he had probable cause to stop him anyway, but nobody's ever passed on that or argued it or relied on it or anything. Right. The probable cause issue, probable cause to arrest, was not reached. No, but he said he had probable cause to stop him. I think he meant the traffic stop. That's what he said. He did. You know, at one point, I'm just getting this. At one point in his testimony, he said he stopped him for probable cause. But then I thought the officer meant reasonable suspicion because when they asked, well, why, he said, I mean, I think in the very next page he said something about, yeah, yeah, yeah. Right. And the magistrate actually made a finding in his report and recommendation that Officer Yannis had not observed any traffic infraction before he turned on his lights and siren. There's a finding in that. Right. But that because he turned on his lights and siren as LaFawn was leaving the apartment complex. I guess it would be a relative finding. But, well, except even if you've got your lights and sirens turned on, once the guy blows through a stop sign, he's committed a traffic violation. But in any event, the issue in this case, I mean, the issue that was briefed and argued in the case, is whether an officer has reasonable suspicion to investigate when he has reliable information that a person is passed out in the front seat of a car with a hypodermic needle in a shotgun. He just needs to sleep. Right. Well, what the colleague said was passed out or dazed out. And the CAD report says passed out. Now, I think to the extent that he said passed out or dazed out might mean that, I mean, that was not explored. That was not explored. But there was a hypodermic needle and a shotgun in an area that is a hotspot for criminal activity. And the 911 caller called and said, you know, come check this out. And so the officer came and checked this out. Now, in finding no reasonable suspicion, what the magistrate judge said was, well, you know, we know at the end of the day because of what happened that Officer Giannis had a good hunch that there was criminal activity, but a hunch isn't good enough. And I think that in doing that, the magistrate judge simply misunderstands what this court and what the Supreme Court has said about a hunch not being good enough. What the courts have said is it is not good enough for an officer to say, I felt it in my gut that this guy was up to no good, or I've been an officer for 20 years, and my instincts were telling me that there's trouble in the air. I can smell it. You know, that the officer, in fact, that's what a hunch, an inchoate, unparticularized suspicion. And that's not what we had here. I mean, the officer needs to be able to point to why. Why were you suspicious? What were the facts that you knew? Well, when he arrived, if he had arrived there and the guy was still in the car, sleeping, and they were still hypodermic, you know, just on an emergency basis or something, he would have had that authority to. Yes, I agree. But he wasn't. Right. He apparently had, he obviously wasn't that bad off because he had driven the car around the corner. He was out of the car. He apparently didn't observe anything about the guy while he was out of the car. Right. And so, to me, that is really the difference here, that he's now investigating not what's happening now, but what happened before, essentially. Well, except that, I mean, it is true that when the officer arrived, the 911 caller came out and said, I'm the one who called you. He came to, or woke up, or whatever, and he drove over there. And so, the officer drives over there, and sure enough, there is the defendant, and he is at this point standing outside the car. So, he's woken up and he's standing up. Officer Yannis testified, you know, he didn't get very close. He was looking at him from a distance because of the shotgun. He kind of was trying to see. The defendant made eye contact with Officer Yannis and then put something in the back seat and drove out of the complex quite hastily. Now, at that point, there's a couple of things that he could be investigating. He could be investigating what had happened before. But now, you've also got somebody driving down a city street who minutes earlier had been passed out, dazed out in a car with a hypodermic needle and a shotgun. Officer Yannis testified, this is at 3 o'clock in the afternoon. The kids are getting out of school. There's school buses. There's, you know, a lot of people around. It's a very busy time of day. Yes. Yes. Right. And that was the basis of the magistrate's finding of no reasonable suspicion. He looked at each one of these things and he came up with a perfectly plausible, lawful explanation. But you can't carry guns openly. It can't be a point of suspicion that somebody's carrying a gun openly. Well, when the, and this is what the magistrate did. By itself, standing alone, Nevada's an open carry state. As long as it's unloaded, it's lawful. So, standing alone, possession of a firearm doesn't amount to reasonable suspicion. There's a hypodermic needle. Well, you know, maybe he was diabetic. It's just as likely that he was shooting insulin as shooting heroin. So, by itself, without more, the magistrate said, you can't, you know, a hypodermic needle by itself doesn't amount to reasonable suspicion. When the officer hit his lights, did Lafon comply? Well, he exited hastily from the apartment complex, blew by the. That's not my question. When the officer turned on his lights and sirened, did Lafon comply? Eventually. He turned on his lights and siren before Lafon exited the complex. So, when he turned on his lights and siren, Lafon was hastily exiting the complex. And pulled over about a quarter of a mile later. And when the officer asked him, Lafon, to exit the vehicle, he complied? He did. And then he couldn't, his gait was unsteady and he couldn't speak. And so, they got him medical attention and took him to the hospital. Yes? Yes? I guess the problem for me is the reliability of the tip. So, I mean, so, you're saying the officer, he just needed to embrace the tip and not question anything? The magistrate made a finding, in fact, that the tip was reliable and that the information was accurate. And that was, I mean, this was, it was not an anonymous tip. I mean, it started out, the 911 call was anonymous. But when the officer got there, yeah. Okay. So, we have that. Yes. So, he's going on the tip. Yeah. Right? But the inference from the tip, I guess, perhaps I shouldn't say that, the inference from the tip is what's a little disconcerting here. Without any identification from the officer, because the officer has to rely on reasonably articulable facts. Right. Yeah. Well, the fact, the articulable facts are the guys passed out or dazed out in a car with a hypodermic needle and a shotgun. Dazed out. I just read the cat on it uses the term passed out. Yes. Where's the dazed out? That was, I'll find that in the transcript. I've got 40 seconds left. I'd love to save for a rebuttal. If I can't, then I'll find it in the meantime. Thank you. Good morning, Your Honors. Erica Choi for Robert LaFawn. I think the court's picked up on what's the key point here, which is that not only did the officer have the information from the tip, the information was reliable, but it did not create reasonable suspicion. Importantly, when the officer arrived, nothing that he observed matched up with what the tip said. Well, it matched up with what the tip said. Well, yes, but it didn't match up either. There was nothing that supported any of the inference when the drug was used. Correct, Your Honor. And that's the point that the district court magistrate judge made, that there was no information connecting the needle to the legal drugs. There was no suspicion of a drug sale or no report that there was drugs around. And this court, of course, in reviewing the facts for clear error, does give due weight to the inferences drawn by the local judges and law enforcement officers. I guess it's my question. Do you think that if Officer Yones himself had observed the conduct reported in the 911 call, that would have been reasonable suspicion? To initiate a stop. If there were no drugs, if he didn't see any drugs, or he didn't see anything. I'm saying the exact same thing that the tip person saw. I think in that case, the officer could try to have a consensual encounter, maybe knock on the glass and say, excuse me, do you need help? What's going on? Perhaps start an investigation. We'll do that later. Excuse me? We have that case available later. I'll have to stay for that one. But in this case, where there are so few factors weighing in favor of reasonable suspicion, and actually what the officer saw was Mr. LaVaughn standing up, walking upright. Then he got in his car and he drove safely and legally through the apartment complex. What is this about? The point of that question is that if he didn't observe the needle passed out in front of the apartment complex, the information that he got from the person who actually made the 911 call matched exactly the makeup of the car, the license number, the physical description of the individual in the car. Yes, sir. So that's as close as you could get to actually observing what the 911 caller observed, correct? What the officer saw was different, though, and I think that's the distinction. But the totality of the circumstances. What I'm saying is that the information the caller called in, the 911 caller, when came out and revealed, I'm the person who made the call and verified that the makeup of the car was Alexis' car, the license number, the physical description, and the fact that the guy had just driven around to the back. And when the officer saw him in back, the car was there with both doors open? It was the passenger door and the back passenger doors. And he's right, you're a dumpster? Yes. And then when he sees the officer, he drives off? He has something and he puts some object into the car, gets into the car and drives. And he drives safe. That object turned out to be a shotgun, didn't it? That actually was never proven. The government didn't adduce any evidence about what exactly the object was and there was no finding. Was there a shotgun in the car when it was inventory? After the officers arrested him and looked into the car, actually entered the car and looked in, there was a shotgun in the car. But, of course, nothing that the officers found after the stop would have been found in this instance. I'll address the court's, excuse me, the question about. One thing is that as to the relevance of the gun, the government is now arguing that it would be, that there's a crime of having a gun if you're under the influence of drugs. Is that right? They're raising that, yes. And actually below the government never argued that the officer saw a crime or could have, that the stop was justified because Lafon was breaking a crime. Well, it could have been justified because they didn't know that it was under the drugs and I guess they could have had reasonable suspicion to think that it was under the, or they would argue that they had reasonable suspicion to think that it was under the influence of drugs and had a gun because that's what was suggested by the tip. Except that the driving was unimpaired before the officer decided to light, put his lights up and turn his siren on and actually. Was this a traffic stop? What was the traffic stop? Was it a traffic stop? Was it a traffic stop? There is this testimony that I'm going through as a stop sign. There is some reference to it being a traffic stop, but the magistrate judge or anyone else doesn't seem to have said anything about this. So the officer kept calling it a felony car stop for officer safety, I think at one point. He also said at some point it's a traffic stop. He did, and it's pretty clear if the court looks at the record, including the CAD log, the dispatch log, the police reports in this case, and the rest of the officer's testimony that his claim that there was a stop sign and that Lafon blew through the stop sign, it was sort of a last ditch effort when he realized at the hearing that things weren't really going his way. And the magistrate judge never made a finding that Lafon actually broke a law by speeding through a traffic stop, and the government to its credit didn't object to that factually. The officer also said a bunch of other things that were contradicted, and I do wonder how much the magistrate judge was influenced by that. He had officially called him not credible. Correct, Your Honor. But I think if you look at at least the footnote in this case about the officer's testimony for the first time again at the hearing saying the needle was in his arm, that there's sort of an implicit. He said the gun was on the seat. He said the gun was under the seat. He said the gun was behind the seat. In his lap at one point, yes. And also in his lap at one point the officer said the gun was in his lap. So I think the court did very carefully look at what the testimony was about what the officer observed or about what he said the tip was in supporting about from the dispatch log and from the police reports. Do you know of a reference of dazed? Is there a reference to dazed? I believe dazed off was in the at the hearing the officer used the word dazed off or dozed off. It was not in any of the police reports or catalogs. The tip said that or the officer said that? I believe the officer was sort of characterizing him. The witness said, you know, he told me he was dazed off and passed out. And when I hear something like that, I don't know. I'm sorry, I don't know exactly where in the record. Can you talk about the Everett versus California? How do you distinguish that or how do you argue that? I mean, with respect to the tip and what we're supposed to look at. So there are four factors. And the first three are we agree that the information from the tip was reliable. But it's the fourth factor that the information actually has to create reasonable suspicion. And in this case, the tip did not create reasonable suspicion. Possession of a shotgun and a needle in a hot spot of crime. Actually, that wasn't the tip. It was just possession of a needle and a shotgun in a man passed out. That did not create reasonable suspicion. The officer actually in this case conceded that for all he knew, Lafon could have been a diabetic and that he was passed out. You know, he was trying to give himself insulin. But I thought we're not supposed to divide each one and come up with an excuse for each one. I thought the case law says that. So are you not doing that when you make that argument? No, but it's the totality. And if the court looks at pages six and seven of the mastery judge's report and recommendation, you'll see that it's actually all of the factors. Of course, this court looks at factors weighing in favor of and against reasonable suspicion. And the court did look at all of them together and concluded on page eight that, in summary, these factors did not create reasonable suspicion. But let's say the officer or the whole notion that you're supposed to look at things separately, but you have to look at discrete things in order to know what you're adding up. And if the gun, what does the government argue is the relevance of the gun? In a world where it's okay to carry the gun. The government is saying that it was safe to assume that there were drugs involved and that guns usually go with drugs and that it all sort of amounted to enough. But in this case, there was no inference of drugs. Guns are legal. Drugs, of course, there was an inference of the use of a drug, not of any kind of trading in drugs. I mean, the most he could have gotten out of this was the guy was using drugs. Yes, Your Honor. At most, that would be what the government might say. But I think that it's important to remember that the government had the burden of proving the stop was lawful here. They failed to meet their burden. And the district court and magistrate judge, judges both found that the stop was unlawful and this court should affirm. Do you agree or disagree that if the officer, it's a hypothetical, if the officer had observed exactly what the 911 caller observed, that he would have had probable cause to detain before? No, Your Honor. I think that he had enough to knock on the glass and try to get more information. Look around, see if there's anything in plain view that might suggest an inference either way, that this is a diabetic who needs emergency assistance or that there's something else, some crime going on. And if he, thank you. First of all, I apologize. Just sitting there, I wasn't able to find the dates. I know that we're not making it up. It's in there somewhere. But just three very quick points. One is, yes, there is a legal, there is a plausible lawful explanation for each of these factors. But what the courts have said and what the Supreme Court said in Terry is that where there's ambiguity, right, an officer is not required to rule out every possible lawful explanation before deciding that they should investigate. The touchstone of the Fourth Amendment is reasonableness. And the question here is when an officer gets a report of a man with a hypodermic needle and a shotgun, passed out in a car, and then moments later, he's driving down a city street, would a reasonable officer at 3 o'clock in the afternoon when kids are getting off of school, believe that there was a good suspicion to investigate to find out if there was probable, reasonable suspicion that criminal activity is afoot. And when you look at all of these factors together, no reasonable officer would just turn his head and walk away. I see you have a question. Okay. Thank you. We're going to take a case of the United States v. the Progressive Division.
judges: Hawkins, Berzon, Murguia